**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00440-NYW

DAVID E. BOONE,

     Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

     This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33 and 1381–83(c) for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff David Boone's ("Plaintiff" or "Mr. Boone") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reassignment dated July 6, 2017 [#18],[1] this civil action is before this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing [#15; #16; #17], the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision for the reasons stated herein.

---

[1] For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file, using the convention [#___]. For the Administrative Record, the court refers to ECF docket number, but the page number associated with the Record, found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the ECF docket number and the page number assigned in the top header by the ECF system.

## PROCEDURAL HISTORY

This case arises from Plaintiff's applications for DIB, protectively filed on March 28, 2014 [#11-2 at 22; #11-3 at 87; #11-5 at 162–63], and SSI, filed on or about October 9, 2015 [#11-2 at 22]. Mr. Boone graduated from high school and completed "4 or more years of college." *See* [#11-2 at 32; #11-6 at 199]. Plaintiff alleges he became disabled on January 31, 2009, due to severe hearing loss, tinnitus, vertigo, cirrhosis of the liver, high blood pressure/hypertension, breathing issues, enlarged prostate, malignant melanoma, and bladder problems. *See* [#11-3 at 88–89; #11-6 at 198, 217, 227–28]. Mr. Boone was fifty-three at the date of onset of his claimed disability.

The Colorado Department of Human Services denied Plaintiff's applications administratively. *See* [#11-2 at 22; #11-3 at 87, 94]. Mr. Boone timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on July 11, 2014. *See* [#11-4 at 106–07]. ALJ Matthew C. Kawalek (the "ALJ") held a hearing on October 14, 2015. [#11-2 at 22, 48; #11-4 at 121, 153]. At the hearing, Mr. Boone proceeded through counsel, and the ALJ received testimony from Plaintiff and Vocational Expert Nora Dunne (the "VE"). *See* [#11-2 at 22, 80].

At the hearing, Plaintiff testified that he and his wife are currently homeless, staying at a shelter in Colorado Springs. [*Id.* at 66]. Due to his medical conditions, Plaintiff and his wife were assigned to the respect program—an area designed for people with medical needs. [*Id.* at 67]. Plaintiff testified that his main physical impairments include hearing loss, bladder issues, and cirrhosis of the liver. Mr. Boone explained that his bladder issues became so severe he required surgery where doctors drilled a "quarter inch tube . . . through [his] abdomen into [his] bladder" to correct urinary issues, and that he was placed in hospice but has since left hospice and his condition has improved steadily. *See* [*id.* at 67, 75, 77]. Regarding his cirrhosis of the liver, Plaintiff stated that he feels week and fatigued constantly [*id.* at 67–68], and that he

presented to the emergency room on several occasions for injuries sustained while intoxicated, but that he had been sober since the summer of 2015. [*Id.* at 70, 73].

The ALJ also questioned Mr. Boone about his prior relevant work experience. Plaintiff testified that his most recent employment included a position as a retail manager of a gas station convenience store in 2011, but that he ended that employment within a month. *See* [*id.* at 53–55]. Plaintiff also owned and operated a liquor store for approximately four and a half years [*id.* at 55–58], and worked as a sales engineer selling semiconductors for a Californian company [*id.* at 61–63]. Plaintiff also testified, at length, about his job as a self-employed consultant selling "high-tech equipment" and teaching "statistical process control, like, quality[,]" i.e., using statistical techniques to measure and evaluate the quality of the sold products. [*Id.* at 59]. As a consultant, Mr. Boone spent roughly 10 to 20 percent of his time working in his home office, with the rest of his time spent out in the field visiting or teaching clients. [*Id.* at 60]. When out in the field, Plaintiff spent time driving to clients and stood on his feet only when teaching. [*Id.*]. Plaintiff also stated he did not have to carry or lift any significantly heavy materials as a consultant. [*Id.* at 61].

A VE also testified at the hearing. The VE first summarized Plaintiff's past relevant work as a manager of a liquor store, Dictionary of Occupational Titles ("DOT") listing 187.167-126, a specific vocational preparation ("SVP")[2] level 6 light exertion job; a consultant, DOT listing 189.167-010, a SVP level 8 sedentary exertion job, but a light exertion job as performed

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, Social Security Disability and the Legal Profession 163 (Fig. 10-8) (2003).

by Mr. Boone; and accounts manager, DOT listing 003.151-014, a SVP level 8 light exertion job. *See* [#11-2 at 80–82].

The VE was then to consider an individual with Plaintiff's age, education, and work history who had no exertional limitations, but could have no exposure to noises louder than typical office noise or hazards, and who could only receive instructions in writing or in person. [*Id.* at 82]. Based on this hypothetical, the VE testified that such an individual could perform all three of Plaintiff's previous jobs as actually and generally performed. [*Id.*]. Next, the VE was to consider an individual similar to the first hypothetical but with the following additional limitations: occasionally lifting and carrying 10 pounds, frequently lifting and carrying less than 10 pounds, standing and/or walking only 2 hours in a workday, and sitting for 6 hours in a workday. [*Id.* at 82–83]. The VE answered that such an individual could perform only Plaintiff's past employment as a consultant, but limited that to how a consultant job is generally performed in the national economy, not as Mr. Boone actually performed it. [*Id.* at 83]. The VE proclaimed that his testimony was consistent with the DOT. [*Id.*]. Plaintiff's counsel did not question the VE.

On January 7, 2016, the ALJ issued a decision finding Mr. Boone not disabled under the Act. [#11-2 at 41]. Plaintiff requested Appeals Council review of the ALJ's decision [*id.* at 16–18], which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner [*id.* at 1–6]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on February 17, 2017, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *cf. Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## ANALYSIS

### I.      The ALJ's Decision

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C.

§ 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). Additionally, the claimant must prove he was disabled prior to his date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.[3] 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of

---

[3] Here, the ALJ conducted two five-step analyses of Mr. Boone's case—one accounting for Mr. Boone's substance abuse disorder and one not given Mr. Boone's recent sobriety. Both analyses are identical through step three, but differ at steps four and five. Ultimately, the ALJ concluded Mr. Boone was not disabled given his recent sobriety, triggering this appeal. For this reason, I focus solely on the five-step analysis that found Mr. Boone not disabled.

listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional limitations). The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99, 1101 (9th Cir. 1999).

The ALJ found that Mr. Boone was insured for DIB through December 31, 2011, and had not engaged in substantial gainful activity since his alleged onset date of January 31, 2009. [#11-2 at 25]. At step two the ALJ determined Mr. Boone had the following severe impairments: tinnitus, degenerative disc disease of the lumbar spine, benign prostatic hypertrophy status post catheter placement, cirrhosis of the liver, and alcoholic hepatitis. [*Id.* at 33]. At step three the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III,

Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).  [*Id.* at 34–36].

The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform

sedentary work subject to several limitations [*id.* at 36–40], and concluded that Mr. Boone could

perform his previous work as a consultant[4] [*id.* at 40].  The ALJ thus concluded that Mr. Boone

was not disabled under the Act at step four and did not proceed to step five.  [*Id.* at 40–41].

On appeal, Mr. Boone argues the ALJ erred at step four in concluding he could perform

he previous employment as a consultant, because the ALJ based this finding on a broad, generic

occupational classification in violation of the Commissioner's regulations.  [#15].  For the

following reasons, I respectfully disagree and conclude the ALJ did not err at step four.

## II.      Step Four

At step four, it is Mr. Boone's burden to establish that he is unable to perform has past

employment as a consultant "*both* as [he] actually performed that work in the past *and* as it is

generally performed in the national economy."  *Adams v. Colvin*, 616 F. App'x 393, 394 (10th

Cir. 2015) (emphasis in original) (citing *O'Dell v. Shalala*, 44 F.3d 855, 859–60 (10th Cir.

1994); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993)).  *See*

*also* Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2 (explaining a claimant will be

found "not disabled" if she can perform her particular past relevant job *or* as the job is performed

generally throughout the national economy).  However, the Commissioner's regulations mandate

that the ALJ make specific factual findings as to a claimant's ability to perform past relevant

work, *see* SSR 82-62, 1982 WL 31386, at *3, but this does not mean the ALJ is to act as the

claimant's advocate, *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th

---

[4] The ALJ mislabels Mr. Boone's consultant employment as a Retail Manager, but cites to the DOT listing for consultant.  *See* [#11-2 at 40].  This typographical error does not affect the court's analysis.

Cir. 1993). These specific findings include a determination of (1) the claimant's RFC, (2) the physical and mental demands of the claimant's past relevant work, and (3) the claimant's ability to meet those job demands despite her mental and physical limitations. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (detailing the three phases of step four). Based on these considerations, a finding of "not disabled" may depend on either of these three tests:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.
> . . .
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
> . . .
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The Dictionary of Occupational Titles (DOT) descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it is usually performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.

SSR 82-61, 1982 WL 31387, at *1–2.

Here, Plaintiff argues the ALJ reached his step four conclusion by relying on the first test, which is contrary to law. [#15 at 7; #17]. This is because reliance on a broad, generic occupational classification of the job consultant is "fallacious and unsupportable," as Plaintiff's actual consulting job demanded more, both mentally and physically, than the DOT listing. [#15 at 8–10, 11; #17 at 3–4]. Specifically, the DOT consultant listing does not account for the duties of visiting and teaching clients. [#15 at 8–9 (likening Plaintiff's consulting work to a building consultant, DOT listing 250.357-010, because of his time spent out in the field and to an education consultant, DOT listing 099.167-014, because of his teaching statistical process control)].

The Commissioner responds that substantial evidence supports the ALJ's step four conclusion, because the ALJ properly found that Mr. Boone could perform his past consulting work as that work is generally performed in the national economy. [#16 at 4–5]. That is, the ALJ permissibly relied on the DOT listing for consultant—a listing Plaintiff did not challenge at the hearing—as well as the VE's testimony; nor has Plaintiff overcome the presumption that his past work as a consultant selling high-tech equipment and teaching statistical process control was significantly distinct from the DOT consultant listing. [*Id.* at 8–13]. For the following reasons, I respectfully agree.

As discussed, Plaintiff testified to his work as a consultant selling high-tech equipment and teaching statistical process control.[5] *See* SSR 82-62, 1982 WL 31386, at *3 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."). Mr. Boone testified to the demands of his consulting job as follows: (1) he spent roughly 10 to 20 percent of his time working in his home office, with the rest of his time spent out in the field visiting or teaching clients; (2) he spent time driving to clients; (3) he spent time teaching/training his clients on his products, which required him to stand; and (4) he did not have to carry or lift any heavy materials. *See* [#11-2 at 60–61].

The VE then testified, based on Mr. Boone's testimony and her review of the file, that she had sufficient information to classify Mr. Boone's past relevant work, including his consultant job. [*Id.* at 63]. The VE identified Plaintiff's consulting work with the specific DOT listing of consultant (189.167-010), a SVP level 8 sedentary job. [*Id.* at 80–81]. DOT listing 189.167-010 defines the duties of a consultant as

_____

[5] The record contains no Work History Report; thus, Mr. Boone's testimony is the only record evidence regarding his job duties as a consultant.

Consults with client to define need or problem, conducts studies and surveys to obtain data, and analyzes data to advise on or recommend solution, utilizing knowledge of theory, principles, or technology of specific discipline or field of specialization: Consults with client to ascertain and define need or problem area, and determine scope of investigation required to obtain solution. Conducts study or survey on need or problem to obtain data required for solution. Analyzes data to determine solution, such as installation of alternate methods and procedures, changes in processing methods and practices, modification of machines or equipment, or redesign of products or services. Advises client on alternate methods of solving need or problem, or recommends specific solution. May negotiate contract for consulting service. May specialize in providing consulting service to government in field of specialization. May be designated according to field of specialization such as engineering or science discipline, economics, education, labor, or in specialized field of work as health services, social services, or investment services.

189.167-010 CONSULTANT, DICOT 189.167-010 (G.P.O), 1991 WL 671495. In response to the ALJ's hypothetical regarding an individual of the same age, education, and work background as Mr. Boone and with similar physical limitations, the VE testified that such an individual could perform the job of a consultant as that job is generally performed in the national economy. [*Id.* at 83].

At step four, then, the ALJ concluded Plaintiff retained the ability to perform his past work as a consultant. In reaching this conclusion the ALJ relied on the VE's testimony, Mr. Boone's testimony and reported earnings record, the DOT definition of consultant, and Mr. Boone's exertional and non-exertional limitations as identified in the RFC assessment. [#11-2 at 40]. The court finds no error in this reasoning. *See Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (finding no error at step four where the ALJ relied on the VE's testimony, which was consistent with the DOT, in comparing the plaintiff's RFC with the demands of her past relevant work).

Although there are several DOT listings for various consulting positions, the ALJ's reliance on DOT listing 189.167-010 for consultant does not equate to the ALJ impermissibly

concluding that Plaintiff could perform his past relevant work based on a broad, generic occupational classification of that job. *See* SSR 82-61, 1982 WL 31387, at *1 ("Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable."). Rather, the ALJ properly relied on the VE's classification of Plaintiff's past consulting work under the DOT and the DOT's definition of that job. *See Andrade*, 985 F.2d at 1051 ("The ALJ may rely on the [DOT's] job description for claimant's job category as presumptively applicable to a claimant's prior work." (citations and internal quotation marks omitted)). The ALJ, therefore, did not rely on a broad, generic occupational classification of Plaintiff's past relevant work as Mr. Boone suggests. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1167 (9th Cir. 2008) (remanding to the ALJ based on the ALJ's reliance on the generic classification of the plaintiff's past relevant without explanation or identification of a specific DOT listing); *accord Leggett v. Chater*, 77 F.3d 492 (Table), 1996 WL 71746, at *2–3 (10th Cir. Feb. 20, 1996) (holding as error the ALJ's classification of the plaintiff's past relevant work as "purchasing agent" to refer generally to purchasing-related jobs, despite a specific DOT listing for "purchasing agent").

Next, Mr. Boone avers that the ALJ's reliance on DOT listing 189.167-010 is erroneous because it does not account for his specialized knowledge of selling high-tech equipment and teaching statistical process control; rather, he likens his past consulting work to a building consultant (DOT 250.357-010) given his time in the field and an education consultant (DOT 099.167-014) given his teaching of statistical process control. *See* [#15 at 8–10]. Yet these listings do not appear to have any overlap with Plaintiff's prior consulting work. *E.g.*, 250.357-010 BUILDING CONSULTANT, DICOT 250.357-010 (G.P.O.), 1991 WL 672359 (defining building consultant as someone who sells new home construction to property owners, displays

and explains features of company house plans, secures financing from mortgage company, or may appraise a client's unimproved property to determine a loan value, among others duties); 099.167-014 CONSULTANT, EDUCATION, DICOT 099.167-014 (G.P.O.), 1991 WL 646934 (defining educational consultant duties to include, *inter alia*, developing programs for in-service education of teaching personnel, conferring with school officials to develop adequate curriculum, and interpreting and enforcing state education codes, rules, and regulations). Rather, a review of the record supports the ALJ's classification of Plaintiff's consulting work under DOT listing 189.167-010, as Plaintiff testified to consulting with clients based on his specialized knowledge of selling high-tech equipment and then teaching his clients on the quality of those products based on his application of statistical techniques. *See* 189.167-010 CONSULTANT, DICOT 189.167-010 (G.P.O), 1991 WL 671495 (defining consultant to include, *inter alia*, "[a]nalyz[ing] data to determine solution, such as installation of alternate methods and procedures, changes in processing methods and practices, modification of machines or equipment, or redesign of products or services."); *cf.* The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), at 379 (defining consultant to include those occupations that apply knowledge of statistics to solve problems, conduct research, and to interpret numerical data), *available at* http://www.nosscr.org/sco/sco.pdf. And, as noted, the ALJ may rely on the DOT's job description of a claimant's past relevant work unless the claimant can demonstrate that "the duties in his particular line of work were not those envisaged by the drafters of the category." *Andrade*, 985 F.2d at 1052 (citation and internal quotation marks omitted). Moreover, the VE testified that she had sufficient information to classify Mr. Boone's past relevant work as a consultant under DOT listing 189.167-010, a listing Plaintiff did not challenge at the hearing, and the ALJ properly relied on the VE's testimony. *See Doyal v.*

*Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An ALJ may rely on information supplied by the VE at step four." (internal quotation marks omitted)). Thus, Mr. Boone fails to demonstrate that his previous consulting work was significantly distinct from the duties defined under DOT listing 189.167-010, or that his past consulting work "had significant elements from multiple occupations." *Cutler v. Colvin*, No. 14-CV-01863-CMA, 2015 WL 1433282, at *6 (D. Colo. Mar. 26, 2015).

Nor is this a situation where the ALJ generally classified Plaintiff's past relevant work without identifying the particular functional demands of the job. *See McDade v. Callahan*, 120 F.3d 271 (Table), 1997 WL 413164, at *2–3 (10th Cir. Jul. 23, 1997) (holding as reversible error the ALJ and VE's use of the term "expeditor" to refer to the plaintiff's past relevant work without explaining how the plaintiff could perform such work based on the plaintiff's description of that work and his physical limitations). As mentioned, the ALJ determined Plaintiff had the RFC to perform sedentary work subject to several limitations. *See* [#11-2 at 36]. At the hearing, the ALJ posited a hypothetical to the VE as to whether an individual with Mr. Boone's similar limitations[6] could perform any of his prior relevant work, to which the VE testified that such an individual could perform the work of consultant as generally performed in the national economy. *See* [*id.* at 82–83]. Mr. Boone did not contest this line of questioning at the hearing, and he does not now offer an argument as to why the ALJ's reliance on the VE's testimony was erroneous. *See Roybal v. Colvin*, No. 14-CV-01099-KMT, 2015 WL 5579434, at *8 (D. Colo. Sept. 23, 2015) ("The ALJ is permitted to rely upon the testimony of a vocational expert to determine how a job is generally performed in the economy."). Indeed, because Mr. Boone does not challenge

---

[6] *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (recognizing "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record.").

the ALJ's RFC assessment on appeal, the court "will assume that the RFC includes all of Mr. [Boone's] limitations," and that the ALJ's hypothetical to the VE adequately assessed Mr. Boone's ability to perform his past consulting work. *See Luna v. Astrue*, No. 11-CV-0779-RBJ, 2013 WL 154301, at *3 (D. Colo. Jan. 15, 2013).

Therefore, based on the foregoing, I conclude that the ALJ did not err at step four in finding that Plaintiff could return to his past work as a consultant. A review of the record reveals that substantial evidence supports a conclusion that Mr. Boone could return to such work as it is generally performed in the national economy, and Plaintiff has not met his burden of refuting this conclusion on appeal. *See Barker v. Astrue*, 459 F. App'x 732, 742 (10th Cir. 2012).

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: January 19, 2018                    BY THE COURT:

                                           s/Nina Y. Wang
                                           Nina Y. Wang
                                           United States Magistrate Judge